# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **NENR INVESTMENTS, LLC.,** ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: 1:08cv00047 |
| v. ) | |
| ) | **REPORT AND** |
| **STARBUCKS CORPORATION,** ) | **RECOMMENDATION** |
| Defendant, ) | |
| ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |

In this case, the plaintiffs seek to recover damages arising from a breach of contract based on a lease agreement signed between the plaintiff, NENR Investments, LLC, ("NENR"), a Tennessee Limited Liability Company, and the defendant, Starbucks Corporation, ("Starbucks"). This case is currently before the court on the Plaintiff's Motion For Partial Summary Judgment, (Docket Item No. 15), ("Motion"). Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1332. The Motion is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following Report And Recommendation.

*I. Facts*

The plaintiff, NENR, is a Tennessee Limited Liability Company authorized to do business in Virginia. Over a period of several years, NENR has entered into numerous transactions with Starbucks, a Washington corporation authorized to do business in Virginia, to acquire and develop property to serve as locations for new

-1-

Starbucks coffee stores. In August 2006, Starbucks contacted NENR about acquiring a site for a new Starbucks store in Bristol, Virginia. Starbucks already had identified its desired location for the new store as the location of a closed Krispy Kreme doughnut store, located on Wagner Street in Bristol, Virginia. On or about March 21, 2007, NENR and Starbucks entered into a Commercial Lease Agreement, ("the Lease"). Pursuant to the Lease, NENR was obligated to purchase the property, and Starbucks agreed to lease the property for an initial lease term of 10 years, which would require them to pay monthly expenses, as well as the building's operating expenses.

On March 27, 2007, NENR purchased the Krispy Kreme property, ("the Leased Premises"), and still owns it. Due to the condition of the Leased Premises, a significant amount of renovation was required before the property could be used as a Starbucks coffee store. The Lease, which required Starbucks to perform these initial improvements, included a tenant improvement allowance of $500,000, which NENR agreed to pay to Starbucks in full when Starbucks opened for business. In June 2007, Starbucks notified NENR that it would rather demolish the existing building and construct a new one than attempt to renovate the old Krispy Kreme building. NENR agreed to this change, provided that it would not delay the commencement date for the payment of rent. As a result, NENR and Starbucks entered into a First Amendment to Lease, ("the Lease Amendment"), on December 7, 2007.

To account for the increased cost to NENR resulting from delay in commencing the project, the Lease Amendment decreased the tenant improvement allowance from $500,000 to $475,000. The Lease Amendment also provided for a date on which Starbucks's obligation to begin making payments under the Lease would commence.

The Lease Amendment states that "[t]enant shall commence to pay Base Rent and all other charges hereunder on the date ... that is April 1, 2008."

Starbucks does not dispute that it has not taken possession of the Leased Premises and has performed no work to demolish the existing building or build a new building on the subject site. In addition, Starbucks does not dispute that it has not paid rent since October 1, 2008. Starbucks advised NENR that it did not intend to open a store on the Leased Premises and further instructed NENR to immediately begin mitigation efforts. On or about October 2, 2008, NENR gave Starbucks written notice that it was in default under the Lease and the Lease Amendment.

## *II. Analysis*

With regard to a motion for summary judgment, the standard of review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475

-3-

U.S. at 587. Therefore, in reviewing the plaintiff's Motion in this case, the court must view the facts and inferences in the light most favorable to Starbucks. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

> According to Federal Rule of Civil Procedure 56(d):
>
> If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. The court should so determine by examining the pleadings and evidence before it and by interrogating the attorneys. It should then issue an order specifying what facts -- including items of damages or other relief -- are not genuinely at issue. The facts so specified must be treated as established in the action.
>
> An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.

When this court's jurisdiction is based upon diversity, as it is in this case, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 519, 531 (1990); *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir. 1995); *Merlo v. United Way of Am.*, 43 F.3d 96, 102 (4th Cir. 1994). This court sits in Virginia. Under Virginia law, the law of the place of performance of a contract governs disputes regarding performance. *See Occidental Fire & Cas. Co. Of N.C. v. Bankers & Shippers Ins. Co. Of N.Y.*, 564 F. Supp. 1501, 1503 (W.D. Va. 1983) (citing *Norman v. Baldwin*, 148 S.E. 831 (Va. 1929)). Since the contracts at

-4-

issue here are lease agreements for a parcel of commercial property located in Virginia, these contracts were to be performed in Virginia. Therefore, Virginia law controls.

NENR moves for partial summary judgment on the issues of liability and as to what types of damages are recoverable by NENR. Regarding liability, NENR argues that Starbucks breached the Lease and the Lease Amendment by: (a) failing to pay the rent and other amounts due under the Lease since October 1, 2008; and (b) failing to demolish the existing building on the Leased Premises and construct a new building containing approximately 1650 square feet of floor area. (Plaintiff's Motion For Partial Summary Judgment And Supporting Memorandum Of Law, ("Plaintiff's Brief") at 1, (Docket Item No. 16)). The court notes that Starbucks does not dispute liability.

Paragraph 2 of the Lease Amendment sets forth Starbucks's obligation to make payments under the Lease and the Lease Amendment, where it states "[t]enant shall commence to pay Base Rent and all other charges hereunder on the date (the "Rent Commencement Date") that is April 1, 2008." (Lease Amendment, ¶ 2.) Starbucks admits that it has not paid any rent beginning October 1, 2008, and admits that NENR provided written notice that Starbucks was in breach of its obligations and demanded that Starbucks cure the default within 10 days. (Docket Item No. 7, ("Answer"), at ¶ 15,16.) In addition, an affidavit of Steven Rudd, a member of NENR, submitted by NENR states that Starbucks "has defaulted on all subsequent payments due under the Lease and Lease Amendment." (Attachment to Docket Item No. 15, ("Rudd Affidavit"), ¶ 8.) Starbucks has not provided any evidence showing that it has made such payments.

-5-

Case 1:08-cv-00047-GMW-PMS   Document 31   Filed 05/18/09   Page 5 of 20   Pageid#: 123

Paragraph 1 of the Lease Amendment sets forth Starbucks's agreement to demolish the existing building on the Leased Premises and construct a new building, where it states "[t]he current Building containing two thousand five hundred (2,500) square feet will be razed by Tenant and Tenant will construct a new Building containing approximately one thousand six hundred fifty (1,650) square feet of floor area." (Lease Amendment ¶ 1.) Starbucks admits that it has not taken possession of the Leased Premises and has performed no work to demolish the existing building or build a new building on the subject site. (Answer ¶ 14.) In addition, Starbucks admits that it notified NENR of its intent not to open a store on the Leased Premises. (Answer ¶ 13.)

Based on the evidence set forth, there is no genuine issue of material fact regarding Starbucks's liability for breach of the Lease and the Lease Amendment by: (a) failing to pay the rent and other amounts due under the Lease since October 1, 2008; and (b) failing to demolish the existing building on the Leased Premises and construct a new building containing approximately 1650 square feet of floor area. Thus, the undersigned recommends that the court grant partial summary judgment in favor of NENR as to the issue of liability.

On the issue of damages, NENR argues that it is entitled to recover the following elements of damages for breach of contract: (a) the amount necessary to place NENR in the position it would have occupied had the contract been performed, or, alternatively; (b) the rental payments and other amounts due under the Lease. (Plaintiff's Brief at 1.) NENR further states that any amount of recovery would be reduced by the amount Starbucks has paid under the Lease and is subject to appropriate mitigation of damages. (Plaintiff's Brief at 1.)

-6-

Case 1:08-cv-00047-GMW-PMS   Document 31   Filed 05/18/09   Page 6 of 20   Pageid#: 124

Where a tenant breaches a lease before taking possession of the leased premises, its liability for that default arises from breach of contract. *See Stohlman v. S&B Ltd. P'ship*, 454 S.E.2d 923, 925 (Va. 1995) (citing *James v. Kibler's Adm'r,* 26 S.E. 417, 418 (Va. 1896); *Branning Mfg. Co v. Norfolk-Southern R.R. Co.,* 121 S.E. 74, 79-80 (Va. 1924)). The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *See Brown v. Harms*, 467 S.E.2d 805, 807 (Va. 1996) (internal quotations omitted); *Fried v. Smith*, 421 S.E.2d 437, 439 (Va. 1992); *Westminster Investing Corp v. Lamps Unlimited, Inc.,* 379 S.E.2d 316, 317 (Va. 1989) (internal quotations omitted). "The measure of damages for breach of contract 'is the sum that would put [the plaintiff] in the same position, as far as money can do it, as if the contract had been performed.'" *Nichols Constr. Corp. v. Va. Mach. Tool Co.*, 661 S.E.2d 467, 471 (Va. 2008) (quoting *Estate of Taylor v. Flair Prop. Assocs.,* 448 S.E.2d 413, 414 (Va. 1994)).

However, the contract entered into constitutes the law governing the parties unless it violates public policy. *See Mercer v. S. Atl. Life Ins. Co.,* 69 S.E. 961, 962 (Va. 1911). The key consideration in contract law is protection of the bargained for terms. *See Filak v. George,* 594 S.E.2d 610, 613 (Va. 2004) (citation omitted). The prevailing rule is that parties to a contract may provide the remedy that will be available to them in case a breach occurs so long as the remedy provided is not contrary to the law or against public policy. *See Bender-Miller Co v. Thomwood Farms, Inc.*, 179 S.E.2d 636, 638 (Va. 1971). The intent of the parties as expressed in their contract controls. *See Bender,* 179 S.E.2d at 639. It is the court's

responsibility to determine the intent of the parties from the language they employ. *See Bender,* 179 S.E.2d at 639 (citing *Seaboard AirLine R.R. Co. v. Richmond-Petersburg Turnpike Auth.*, 121 S.E.2d 499, 503 (Va. 1961)). Where the agreement is plain and unambiguous in its terms, the rights of the parties will be determined from the terms of the agreement. *See Harris v. Woodrum*, 350 S.E.2d 667, 669 (Va. Ct. App. 1986).

NENR acknowledges that its remedy for unpaid rents lies in Section 14.2(b) of the Lease, which states:

> In the event of any such uncured default, Landlord may, in accordance with procedures required by law, pursue one of the following remedies:
>
> (b) Landlord may maintain Tenant's right to possession, in which case this Lease shall continue in effect whether or not Tenant shall have abandoned the Premises. In such event, Landlord shall be entitled to enforce all of Landlord's rights and remedies under this Lease including the right to recover the Base Rent and Additional Rent as it becomes due hereunder.

NENR alternatively maintains that it is entitled to recover extra-contractual damages based on Starbucks's failure to improve the Leased Premises by demolishing the existing building and constructing a new one, based on Section 23.11 of the Lease, entitled "Cumulative Remedies," which provides "[e]xcept where otherwise expressly provided in this Lease, no remedy or election hereunder shall be deemed exclusive, but shall, wherever possible, be cumulative with all other remedies at law or in equity."

-8-

In examining the plain and unambiguous terms of the Lease, the undersigned finds that NENR is not limited exclusively to recover only unpaid rents, as such a remedy is not deemed to be exclusive under Section 23.11. The language in this section clearly states that no remedy in the Lease shall be deemed exclusive, unless the Lease expressly states that the offered remedy is exclusive.

Virginia law holds a presumption against exclusivity, as the Supreme Court of Virginia has held that "the remedy provided will be exclusive of other possible remedies only where the language employed in the contract clearly shows an intent that the remedy be exclusive." *Bender-Miller,* 179 S.E.2d at 638; *see also Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709, 713 (4th Cir. 1993); *Ndeh v. Midtown Alexandria., LLC,* 300 Fed. App'x 203, 207 (4th Cir. 2008) (citing *People Karch Int'l Co., Ltd. v. Peuler,* No. 94-1144, 1994 WL 702105, at *7 (4th Cir. Dec. 15, 1994) (per curiam) (unpublished); *Safeway Inc. v. CESC Plaza Ltd. P'ship,* 261 F. Supp. 2d 439, 444 n.1 (E.D. Va. 2003); *In re James R. Corbitt Co.,* 48 B.R. 937, 941 (Bankr. E.D. Va. 1985); *cf. TQY Invs. v. Rodgers Co. Inc.,* 1991 WL 835251, at * (Va. Cir. Ct.1991) (discussing the presumption against exclusivity without citing *Bender-Miller*: "Where, however, there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedy which the law affords.").

In construing Section 14.2 of the Lease with a presumption against

-9-

Case 1:08-cv-00047-GMW-PMS   Document 31   Filed 05/18/09   Page 9 of 20   Pageid#: 127

exclusivity, the undersigned does not find anywhere in the plain language of the contract that such a remedy for an uncured default is exclusive. The court in *Ndeh* found no exclusive remedy where the contract did not state that Ndeh shall have "only" the listed remedies or that it is "limited to" the listed remedies. *See* 300 Fed. App'x at 207. In the case at hand, the contract states that "[i]n the event of any such uncured default, Landlord *may*, in accordance with procedures required by law, pursue one of the following remedies." (emphasis added). Such a remedy is permissive, as opposed to mandatory or exclusive. *See Atlas Mach. & Iron Works,* 986 F.2d at 713. Therefore, the undersigned finds that NENR is entitled to pursue extra-contractual damages based on Starbucks's failure to improve the Leased Premises by demolishing the existing building and constructing a new one.

The undersigned finds no merit in Starbucks's contention that an ambiguity exists between Sections 14.2 and 23.11 of the Lease, thus creating a material fact in dispute. In *Pocahontas Mining Ltd. Liab. Co., v. CNX Gas Co., LLC.,* the court noted that "[a]n ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." 666 S.E.2d 527, 531 (Va. 2008) (citing *Video Zone, Inc. v. KF & F Props., L.C.,* 594 S.E.2d 921, 923 (Va. 2004); *Tuomala v. Regent Univ.,* 477 S.E.2d 501, 505 (Va. 1996); *Galloway Corp. v. S.B. Ballard Constr. Co.,* 464 S.E.2d 349, 355 (Va. 1995)). The court further noted that "[t]he mere fact that the parties disagree about the meaning of the contract's terms is not evidence that the contract language is ambiguous." *Pocahontas Mining,* 666

Case 1:08-cv-00047-GMW-PMS   Document 31   Filed 05/18/09   Page 10 of 20   Pageid#: 128

S.E.2d at 531 (citing *Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp.,* 556 S.E.2d 769, 771 (Va. 2002); *Galloway,* 464 S.E.2d at 354; *Wilson v. Holyfield,* 313 S.E.2d 396, 398 (Va. 1984)).

The *Pocahontas Mining* court also stated that "[i]n determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning." 666 S.E.2d at 531 (citing *Video Zone, Inc.,* 594 S.E.2d at 924; *Haisfield v. Lape,* 570 S.E.2d 794, 796 (Va. 2002); *Pocahontas Mining,* 556 S.E.2d at 772)). In applying these principles, the undersigned finds no ambiguity between the two Lease provisions. The Lease language signifies the parties' clear intention that the remedies in Section 14.2 are not to be considered exclusive. For such a provision to be considered exclusive, the parties would have added express language that stood for such a proposition. Rather, Section 14.2 provides remedies that NENR "may" pursue.

The undersigned also finds no merit in Starbucks's contention that NENR's claim for lost expectation damages is inconsistent with the terms of the Lease, based on its argument that NENR could not have reasonably expected Starbucks to remain in the Leased Premises. Starbucks supports its claim by citing the lack of a continuous operation covenant and a lack of any representation or warranties as to the level of gross sales it might generate or number of customers it might attract. Such an argument is inconsistent with NENR's second claim that Starbucks breached the Lease and the Lease Agreement by failing to demolish the existing building on the Leased Premises

-11-

and construct a new building. This claim seeks to recover lost expectation damages resulting from Starbucks's failure to perform its contractual obligations to destroy the existing building and construct a new one, thus markedly increasing the value of the building over its current value.

Starbucks's contention that it was not subject to a continuous operation clause and that it did not make any representation or warranties as to gross sales or number of customers, only addresses NENR's claim for unpaid rent, and fails to address NENR's claim for lost expectation damages based on Starbucks's nonperformance under the Lease and the Lease Agreement. Whether or not Starbucks remains on the Leased Premises after opening, or whether it is able to generate substantial sales or customers, is a separate issue from its obligation to demolish the existing building and construct a new one. The damages resulting from such nonperformance include a decrease in property value of the Leased Premises. Contrary to Starbucks's assertion, such damages are the direct result of its nonperformance under the Lease and the Lease Amendment.

Starbucks additionally argues that NENR's argument for extra-contractual damages must fail because it is too legally and factually speculative to permit recovery, as it is based on NENR's desire to sell the property at some unknown future date for some unknown amount to an unknown buyer. Starbucks bases its contention on the unforseeability of both the renewal of its 10-year lease and the volatility of the real estate market. The undersigned finds no merit to this claim.

In a breach of contract action, recoverable damages "are such as may fairly and reasonably be considered as arising naturally… from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at time they made the contract, as the probable result of breach of it." *Sinclair Refining Co. v. Hamilton & Dotson,* 178 S.E. 777, 779 (Va. 1935). In addition, "[w]here the wrongful act of the defendant is of such a nature as to constitute an entire breach of the contract, compensation therefor may be recovered at once for the whole loss . . . if the future damage resulting therefrom can be ascertained with certainty." *James,* 26 S.E. at 418.

However, "[w]hile a plaintiff has the burden to establish its damages with reasonable certainty, ... [d]amages need not be established with mathematical certainty." *Nichols,* 661 S.E.2d at 472 (internal quotations omitted). "Rather, a plaintiff is required only to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained." *Nichols,* 661 S.E.2d at 472 (internal quotation omitted). "Accordingly, the determination of damages for a breach of contract will always be fact specific, and no single method exists for calculating the amount necessary to place the plaintiff in the position he would have occupied had the breach not occurred." *Nichols,* 661 S.E.2d at 472 (citing *Appalachian Power Co. v. John Stewart Walker, Inc.,* 201 S.E.2d 758, 767 (Va. 1974)).

Under the terms of the Lease, NENR purchased the Leased Premises for a known amount, and Starbucks was obligated to improve the Leased Premises

-13-

by demolishing the existing building and constructing a new one. Under the "value rule" for determining monetary damages in breach of construction contract cases, the Supreme Court of Virginia delineated that such damages should be based on "the difference between the value of the [structure] properly completed according to the contract and the value of the defective structure." *Nichols,* 661 S.E.2d at 472 (quoting *Mann v. Clowser,* 59 S.E.2d 78, 85-86 (Va. 1950)).

NENR has stated that it is prepared to present evidence of the value of the Leased Premises with the improvements required by the Lease Amendment, as well as evidence of the value of the Leased Premises as it stands today. NENR correctly notes that Starbucks is entitled to challenge these values with evidence of its own. However, the undersigned cannot find at this stage that damages are too speculative to render them unrecoverable as a matter of law, as they appear to be ascertainable to a requisite degree. Starbucks's contentions about the unforseeability of both the renewal of its 10-year lease and the volatility of the real estate market are immaterial when considering the rule in Virginia which states that "damages are to be determined at the time of the breach of a contract" and "[e]vidence of fluctuations in value after the breach is irrelevant." *United Va. Bank of Fairfax v. Dick Herriman Ford, Inc.,* 210 S.E.2d 158, 161 (Va. 1974).

Starbucks claims that this matter is not yet ripe for summary judgment, as this is only appropriate after sufficient time for discovery. As a result, Starbucks claims that it is prejudiced by the lack of discovery and cannot

properly oppose the Motion without such information. In making this argument, Starbucks cites Federal Rule of Civil Procedure 56(f), which allows the court to postpone any ruling on a motion properly before the court so that an affidavit, deposition or other discovery can be completed prior to the court's decision. However, this motion may be made, and relief may be granted, only based on an affidavit of the party opposing the motion. *See* FED. R. CIV. P. 56(f).

The undersigned finds that Starbucks has not complied with Rule 56(f). In *Evans v. Technologies Applications & Service Co.,* the Fourth Circuit held that the nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled. *See* 80 F.3d 954, 961 (4th Cir. 1996). The court cited Rule 56(f) in stating this proposition, and additionally noted that it "place[s] great weight on the Rule 56(f) affidavit, believing that '[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.'" *Evans,* 80 F.3d at 961 (quoting *Nguyen,* 44 F.3d at 242.)[1]

---

[1]The United States Court of Appeals for the Second Circuit has similarly explained that "[a] reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit ... and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994).

-15-

This court has previously stated that "[m]aking vague assertions about additional areas of discovery is not enough to establish grounds for a Rule 56(f) continuance." *Powers v. Wal-Mart Stores, Inc.,* 2006 WL 2868320, at *6 (W.D. Va. 2006) (citing *Nguyen*, 44 F.3d at 242). "Instead the party opposing summary judgment must present an affidavit to the court that specifies, with particularity, legitimate needs for further discovery." *Powers,* 2006 WL 2868320, at *6 (citing *Nguyen*, 44 F.3d at 242).

In the case at hand, Starbucks has not made any attempt to file an affidavit as required by Rule 56(f). Rather, Starbucks makes its discovery concerns known in its memorandum in opposition to NENR's motion for partial summary judgment. Although Starbucks's memorandum refers to its lack of discovery, the effort is insufficient to compel denial of NENR's motion for partial summary judgment.

In addition to failing to submit an affidavit in support of a Rule 56(f) motion, Starbucks has failed to provide any evidentiary materials in support of its opposition to NENR's motion for partial summary judgment as required under Rule 56(e), which "requires the nonmoving party to go beyond the pleadings and by her own affidavits," or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324. In addition, a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific

facts showing that there is a genuine issue for trial. *See Anderson,* 477 U.S. at 248.

Earlier today, Starbucks filed the Affidavit of Paul Robeznieks. This affidavit, however, raises not genuine issue of material fact.

In the case at hand, NENR has filed a motion for partial summary judgment as to the determination of liability and the types of damages recoverable as a matter of law. NENR has not asked the court for a determination as to the amount of damages recoverable. Based on NENR's Motion, Starbucks has failed to provide any supporting documentation, beyond the pleadings, which shows specific facts in dispute on the issues of liability and the types of damages recoverable. Rather, Starbucks relies on its own unsupported allegations and denials in attempting to prove material facts in dispute. While the undersigned finds that a dispute exists as to the amount of damages recoverable, this does not prevent entry of partial summary judgment in the plaintiff's favor as to liability and the types of damages recoverable, if proven.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Starbucks has failed to pay rent and other amounts due under the Lease since October 1, 2008;

2. Starbucks failed to demolish the existing building on the Leased Premises and construct a new building;

3. Starbucks is liable for breach of the Lease and the Lease Amendment;

4. NENR is not limited exclusively to recover only unpaid rents, as such a remedy is not deemed to be exclusive under Section 23.11 of the Lease;

5. Section 14.2(b) of the Lease provides permissive remedies, rather than mandatory or exclusive remedies;

6. No ambiguity exists between Section 14.2(b) and Section 23.11 of the Lease;

7. Starbucks's contention that it was not subject to a continuous operation clause and that it did not make any representation or warranties as to gross sales or number of customers is immaterial to its failure to demolish the existing building on the Leased Premises and construct a new building;

8. The damages resulting from Starbucks's nonperformance under the Lease and the Lease Amendment include the loss in property value of the Leased Premises attributable to Starbucks's failure to demolish the existing building and construct a new building;

9. Damages are not too legally or factually speculative to preclude recovery if they can be ascertained with reasonable certainty;

10. Starbucks has not complied with Rule 56(f) by failing to submit an affidavit;

11. This matter is ripe for summary judgment; and

12.  Starbucks has failed to provide any supporting documentation, beyond the pleadings, which shows specific facts in dispute on the issues of liability and the types of recoverable damages, as required under Rule 56(e).

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the court grant the Motion and award partial summary judgment in favor of the plaintiff regarding the issue of liability, as well as the types of damages recoverable for breach of contract for failing to demolish the existing building on the Leased Premises and construct a new building.

## Notice To Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the

-19-

conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable Glen M. Williams, Senior United States District Judge.

The clerk is directed to send copies of this Report and Recommendation to all counsel of record.

**DATED:** This 18th day of May 2009.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE